(C.D. 2262)

V. G. NAHRGANG v. UNITED STATES

United States Customs Court, Second Division

(Decided May 31, 1961)

*John C. Ray* for the plaintiff.

*William H. Orrick, Jr.,* Assistant Attorney General (*Sheila N. Ziff,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The above two causes of action were consolidated for trial. They relate to importations of various parts of

blowers manufactured in Canada by the Lau Blower Co. of Dayton, Ohio.

The articles were classified by the collector of customs as parts of blowers having as an essential feature an electrical element or device and duty was imposed thereon at the rate of 17½ per centum ad valorem, as provided in paragraph 353 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 353), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

Plaintiff claims by its protests that the importations should be classified as parts of furnaces in said paragraph 353 of the above act (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and subjected to duty at the rate of 12½ per centum ad valorem; or as parts of air conditioners and dutiable at 13¾ per centum ad valorem in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified by the Torquay protocol, *supra.*

At the trial, however, plaintiff's motion to amend the protest was granted, "* * * to make alternative claims under Paragraph 353, that the articles are either parts of furnaces having as an essential feature an electrical element or device with the duty at the rate of 12½% ad valorem; or under 'other' of said Paragraph 353 as parts of air conditioners having as an essential feature an electrical element or device with duty at the rate of 13¾% ad valorem."

The pertinent text of the statutes involved herein is set forth below.

Paragraph 353 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra:*

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

    Switches and switchgear which are not wiring apparatus, instruments, or devices; fans; blowers; and washing machines_____ 17½ ad. val.

Paragraph 353 of said act, as modified by the Torquay protocol, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

    Batteries_____ * * *

\*     \*     \*     \*     \*     \*     \*

    Electric motors, furnaces, heaters, and ovens_____ 12½% ad val.

\*     \*     \*     \*     \*     \*     \*

| | |
|---|---|
| Other * * * _____ 13¾% ad val. | |
| Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part * * * _____ | The s a m e rate of duty as the arti- cles of w h i c h they are parts |

The only witness in the case was called by plaintiff. The substance of his testimony follows: He had been sales manager for the Lau Blower Co., the real party in interest, manufacturer of devices for air-condi- tioning systems. He described a winter air-conditioning unit as a modern development of the old coal-fired furnace; the operation of the furnace was controlled by thermostatic action and, by means of a blower, the air was filtered and dehumidified, and in that way tem- perature changes were controlled. Sixty per centum of the present importations was sold to manufacturers of winter air-conditioning units; roughly, 14 per centum was sold to manufacturers of summer air-conditioning units; and approximately 23 per centum was sold to manufacturers making both summer and winter air-conditioning units. The same type of blower is employed for summer air-conditioning in residences as is used for heating; that the blowers cannot function by themselves. The witness conceded that the blower in a forced warm air furnace could function in the summer without operating the furnace.

Regardless of whether blowers are used with or without furnaces, the fact, nevertheless, remains that the importations concededly consist of parts of blowers.

At the trial and in its brief, plaintiff has endeavored to establish that the imported parts of blowers are, in fact, parts of furnaces or parts of air conditioners, having as an essential feature an electrical element or device within the meaning of paragraph 353, as modified. However, there is evidence in the record that "Series A" blower as- semblies are "recommended for warm air furnaces, central air condi- tioning systems, evaporative coolers, cooling towers, and remote condensers."

The above-quoted matter is from an advertisement by the real im- porter relating to "Series A" Lau blowers of which, with the excep- tion of a motor, the importations in controversy are merely parts. Note exhibit B, page 5, of a publication entitled "Air Conditioning, Heating, & Refrigeration News."

While it has been judicially determined that a part of a part is a part of the whole, and that parts of blowers which, in turn, become parts of furnaces, might, under certain circumstances, be legally regarded as

parts of furnaces, we are of the opinion that the structure of paragraph 353, as modified, would not permit that principle of construction to apply here for the following reasons.

Since it is admitted by plaintiff that the importations under consideration are parts of blowers, they are specifically provided for as such. The provision of law adopted by the collector of customs in classifying the importations expressly provides for blowers and the statute also provides that parts shall pay the same rate of duty as the articles of which they are parts. If we were to adopt the interpretation of the statute urged by plaintiff, not only the parts of blowers but the blowers themselves would be parts of furnaces. Such a construction of the statute would deprive the provision for blowers and parts thereof of its logical operation. It seems obvious that when the negotiators modified paragraph 353 and provided different rates of duty on blowers and furnaces it intended that blowers and parts thereof, when imported independently of furnaces or other apparatus, should be classified as blowers and parts thereof.

In view of the facts of record and for the stated reasons, we find and hold that the evidence does not establish that the importations are parts of furnaces in a legal sense, but that they were properly classified as parts of blowers having as an essential feature an electrical element or device in said paragraph 353, as modified, *supra*.

The claim of plaintiff for classification of the subject merchandise in paragraph 372, not having been pressed, is deemed to have been abandoned.

The protests are overruled in all respects and judgment will issue accordingly.